Good afternoon, your honors. My name is Vicki Buchanan. I'm here on behalf of Ronald Ford. This is a sad case. My client is very much a victim of this particular case. The actual criminals, the people that are involved in human trafficking, are probably, as we speak, going to homeless shelters and trolling for other people who are mentally ill or in Mr. Ford's position to take them to Mexico to get them to drive through the gates with him. In this case, there can be no doubt that the only reason that Mr. Ford drove the car was because he believed, subjectively, but he believed that he was, had to save his sister, who he believed that the people that were involved in this particular case were mentally ill. The jury should have had the instruction so that they could have made that decision themselves with the proper instructions as to whether or not, under the circumstances, this was duress. Well, now, what happened, as I understand it, the request for a duress instruction was given before the case started, before the jury. And the judge said, well, we'll wait and see how the evidence comes in, and then I'll tell you whether I'm going to instruct the jury on defense. Is that what happened? That's correct. Then the evidence came in, and the judge determined not to give the duress instruction. And you say he should have, because although the sister was up in Northern California, I think? Yes. Her address was on that card that he had left down in Tijuana. Yes, for O.K. Mesa. He's unclear as to where he really was. And the immediacy point was, I guess you would argue, that the people who were pressuring him to do this could have called somebody up north rather quickly and had that threat carried out. Is that how you answer the immediacy problem? Well, that's basically it. As far as Mr. Ford was concerned, and this was kind of in his statement to the police officer that came in as an exhibit in the case, was that he believed that the Phillips, the people that were holding him or who were threatening him, were part of what he thought was the Mexican mafia. So they were connected so that they could make a phone call and harm his sister if he did not comply with their request. Did he ever say that? Did they ever testify or say they could have made the phone call or anything like that? No, I think it's implied. I mean, I think it's implied because they're part of the mafia. He was explaining to the second officer during the second time he crossed the border. He was saying that, you know, they could hurt my sister. They're part of the mafia. You don't understand. It's a family thing. So I think it's implied that he believed, at least Mr. Ford believed, that his sister could be in harm. See, his concern is for, not for himself particularly. In fact, I think not at all for himself. His concern was for the sister. But she's a long, long way away in a different country. And how could that have been the kind of threat of force that would support a duress instruction? I guess that's the question. The immediacy. I think that there's enough evidence. And the evidence, we don't have to rise. That's another problem with the judge's decision. He was basing it on substantial evidence. And all you really need is some evidence. So perhaps that's something that the jury, that is why the jury should have answered that particular question. Is there immediacy in this particular case? So that's the first part of the error that we see. Now, one of the tests for the instruction is it has to be a well-grounded fear. The threat will be carried out. Yes. And if you look at the Johnson case, which describes the well-grounded fear. Where's the well-grounded fear here? Well, it's well-grounded based on the circumstances in which he finds himself. It's not just well-grounded for you and I to be threatened by Papa Philippe down here in Pasadena. It has to do with the circumstances in which he found himself. Under the Johnson case, it says, fear which may be irrational in one set of circumstances may be well-grounded if experienced by the defendant and those applying the threat in this particular case. And the well-grounded fear is here he is. He's been down in this house. He's been exuberant and sharing this gift from his sister. And telling people all about her. And now these people say, okay, well, essentially, if you care about your sister, you need to drive a car across the border. And so his well-grounded fear is that these people would do something to his sister if he didn't do that. And that would be, once again, some evidence. It doesn't sound too well-grounded. What's that? It doesn't sound too well-grounded. Maybe it doesn't sound too well-grounded for us, but maybe it's well-grounded for someone who was homeless, who now finds himself in Mexico. Is that a subjective thing because intent is part of the element here? Intent is not an element of the crime charged. It's a general intent crime. So intent, it does not go to intent, the actual crime that was charged here. So it is. Is there any sort of diminished capacity defense to the crime that was charged? No. And that goes to my second argument, the second argument, which is what the judge said to the jury. So, you know, I think that there is enough evidence in the record, the scintilla of evidence that even, you know, there is some evidence that the jury should have been instructed on the arrest. Seems like there's another test is the opportunity to escape. Well, that one I think is. Seems like he's got plenty of opportunities. Is that right? Well, he, I don't know that he had plenty of opportunities provided the escape, meaning he would get out of harm's way. That doesn't take a sister out of harm's way. He did explain to the first border guard three times and the border guard said, you know, they're holding my sister or they're threatening my sister. So that didn't do him any good the first time he said it. He said it again the second time he was caught that they were threatening his sister. He can't call his sister. He didn't have enough money to use the public toilet on the side of the border. Did he have the opportunity to escape for his sister? I think the opportunity to escape in this particular case may not even be an element because he's threatening someone besides yourself. I mean, I guess if you were a rational person who had the ability to escape and call the police. Oh, he could stash his sister someplace where she couldn't be harmed? Is that the escape? That would be the escape to be able to say, please call my sister. In fact, I think in the second interview, if I recall in the second interview, he says you've got to call my sister or somebody's got to get a hold of my sister and warn her. Wasn't there plenty of time to call the sister? He could have called the sister and said you better clear out. He's homeless. The Mexican Mafia is after you. He's homeless. He has no money. I don't even know if he would really actually know what a sister's phone number is. So anyway, I believe there is enough evidence that the jury at least should have discussed those same issues that we're talking about right here. The second question, I think, is really actually a more fundamental question. It may actually rise to the level of structural error or plain error. At the time that the jury went before the jury, the jury came in with their question saying, may we consider Mr. Ford's mental condition? It seems inhumane not to consider it. And Judge Sabra came back and had a statement, and it's a two-part statement. And the first part basically discussed what you were talking about, that mental health may not be, may or may not be a defense to a certain action, but it is not a defense to this action. Now, if he had stopped there. He would have been fine. And I agree with that. I agree that if he had stopped there, it was an accurate statement of the law. I also think that that's what Mr. Ford's attorney was saying when she was discussing that. She said it's an accurate statement, but it focuses too much on mental health without allowing them the opportunity. It's when the court went on a step further to say that if the jury finds Mr. Ford guilty, then they will be able to, that the court may take into account his mental condition at the time of sentencing. Well, that's the big problem here. The government, I believe, misunderstood my argument because they're saying that I wanted them to know that, in fact, that statement was misleading, because Mr. Ford was subject, because of the way the government charged this case. By charging Mr. Ford for the financial gain that was being made by the Phillips, Mr. Ford is now subject to the mandatory minimum sentence because there are at least three aliens they proved. And that's what he got. That's what he got. He got 16 months, 5 years. The judge did comment on mental condition at the time of imposing sentence, did he not? He did. I mean, he looked at it. He looked at the 3, 5, 5, 3 factors. But what are those going to do you when you've got a mandatory minimum? Well, he didn't get any more. Well, he didn't get any more, no. But I don't know. Actually, I was thinking about that this morning. You know, I should have actually looked at the sentencing guidelines to see where we were in terms of the actual sentencing numbers. But, no, he didn't get any more. But I don't think that – I believe that based on what Judge Sabra said and the compassion you can tell, that I don't think he really would have sentenced Mr. Ford to anything near 5 years. This is a sad case. There are no great solutions here. But he could take it into consideration even though there was a mandatory minimum. Well, he could take it into – And did so, apparently. But he could. But what good did it do Mr. Ford? Well, I don't see how it's misleading anybody. Well, I think it implies to the jury that he'll take it into consideration and that, therefore, the jury, you know, doesn't have to make the hard decision that they would otherwise have to make. They'll say, Mr. Ford will be taken care of on the other end. I think you have to look at it in context of their question, you know, that he'll be treated humanely. And I think that it implies that the judge has the ability to treat Mr. Ford humanely on the other end. The defense counsel agreed to the response the judge gave. Is that correct? She said that the first statement was accurate. I mean, she said the statement was accurate, and I think she was referring to the first part of the statement. Actually, what she said at the end after they'd argued back and forth and back and forth, what she finally said at the end was, Judge, I think what you need to do is just tell the jury we can't answer your question. So I don't think it's really a concession on the entire verdict, I mean, the entire answer. And also, I think in this particular case, given the context in which it was issued and the question the jury asked, I think it is plain error regardless. I'll reserve any comments. Good morning, Your Honor. Joseph Green with the United States. I'd like to just pick up where the court left off and note that Ms. Dobro, after the court had discussed with both the attorneys the note that came out with the court's response, that would be her response, and this is at the exhibit, her excerpts of the record, 639, was that she wrote, I think that would temper the proposed answer, and I would approve it. Ms. Mannion, the government counsel, agreed. And then the court turns its attention to another subject. So I think ultimately there was a waiver by Ms. Dobro who represented Mr. Ford. I believe that most of the arguments have been addressed in the government's brief. Quickly on the issue of duress, I believe that Mr. Ford had made a prima facie showing as to any of the three elements that he must show in order to warrant the duress defense. On the lack of opportunity to escape, I would just highlight the fact that, of course, there were two events here. In between the time of the first and second event, Mr. Ford went back to the house where he met the smugglers who had set this up, and he testified that he was free to come and go. So he could have left. He could have let someone know. And I think that on its own would undermine the argument that he should have received the duress instruction. The duress defense apply where it's a third person rather than the defendant? He claims duress because his sister may be harmed. Is that a good defense? You know, I don't have a case that says that where it's a third person who's going to be harmed, that ought to be treated differently. But I think the reasoning is the same, that where the person has the opportunity to escape the harm, that they ought to do that before committing the criminal activity, in this case, alien smuggling. So the rationale, I think, behind the rule would urge the court to apply it equally, whether someone's claiming a third-party harm or harm to themselves. Is there a further answer? Seeing no further questions, the government will submit. Thank you, counsel. I just wanted to make a point on the last, on the issue about whether counsel approved of the instruction. I believe counsel was referring to the second, the new added language where the judge was going to allow the jury to consider, you know, to add mental health, however it affects the government's burden of proof. And I believe that that's what she was referring to. All right. Thank you, counsel. Thank you. The case of United States v. Ford will be submitted. We'll take up Nelson v. NASA.
judges: Thompson, Wardlaw, Reed